# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OSBALDO JOSE-NICOLAS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16-cv-402-MJR-SCW ) |
| KIMBERLY BUTLER and WALLACE STROW, | ) ) ) ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Osbaldo Jose-Nicolas, now represented by counsel, filed his complaint against Kimberly Butler and Wallace Strow for deliberate indifference to his serious medical condition, namely the treatment for two of his wisdom teeth. This matter is before the Court on Defendant Wallace Strow's motion for summary judgment for failure to exhaust administrative remedies (Docs. 31 and 32). Defendant Butler has joined in Strow's motion (Docs. 39 and 40). Plaintiff has filed a response (Doc. 41) in opposition to the motion. Defendant Strow has filed a reply (Doc. 42). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to **28 U.S.C. §§ 636(b)(1)(B) and (c)**, **Federal Rule of Civil Procedure 72(b)**, and **Local Rule 72.1(a)**. The undersigned held an evidentiary hearing on the motion on June 5, 2017. Based on

the following, it is **RECOMMENDED** that the Court **GRANT** the motion for summary judgment as to both Strow and Butler.

FACTUAL BACKGROUND

A. **Procedural Background**

Plaintiff filed his complaint against Kimberly Butler and Wallace Strow for deliberate indifference to his dental care. As narrowed by the Court's threshold order, Plaintiff's complaint alleges that Plaintiff had pain in his lower right and left wisdom teeth and reported that pain to Strow on July 1, 2014 (Doc. 6, p. 2). Plaintiff also informed Strow that he had yellow stuff oozing from his left tooth (*Id.*). An x-ray was ordered and Strow told Plaintiff he would seek approval for the extraction of the wisdom teeth, but in the interim he prescribed Plaintiff with antibiotics and pain medication (*Id.*). Plaintiff did not hear back from Strow.

On July 31, 2014, Plaintiff alleges he wrote an emergency grievance to Kimberly Butler explaining that his tooth was still oozing and that he had not had a follow up with Strow about the extraction of his wisdom teeth (Doc. 6, p. 2). Plaintiff did not receive a response to the emergency grievance (*Id.*). Plaintiff submitted a request to the healthcare unit on August 8, 2014 for extreme pain and he was seen on August 11, 2014 (*Id.*). The nurse in the healthcare unit prescribed pain pills and antibiotics as well as requested extraction for the infected tooth. Plaintiff's lower left wisdom tooth was extracted on August 14, 2014 (*Id.* at p. 3). His right wisdom tooth was extracted on September 17, 2014 (*Id.*).

Subsequent to Plaintiff filing his complaint, Defendant Strow filed his motion for summary judgment arguing that Plaintiff had failed to exhaust his administrative remedies against him (Docs. 31 and 32). Defendant Strow argues that Menard only has three grievances on file from Plaintiff in 2014 and none of those grievances were regarding Strow's treatment of Plaintiff's teeth (Doc. 32-1, p. 3-7, 22-25, 35-37). The grievance records do not indicate that a grievance regarding Plaintiff's dental care was received by Menard staff (*Id*. at p. 44-57). Nor does the emergency grievance log indicate that a grievance was received from Plaintiff regarding dental care (*Id*. at p. 57-64). The emergency grievance log does reflect that one grievance was received from Plaintiff on July 15, 2014 regarding his fan and was returned to Plaintiff as not an emergency (*Id*. at p. 62).

ARB records indicate that a grievance labeled DTD 7-31-2014 regarding the extraction of Plaintiff's wisdom teeth was received by the ARB on December 11, 2015 (Doc. 32-2, p. 2, 31-33). The grievance is dated July 31, 2014 and marked as an emergency grievance (*Id*. at p. 32). The grievance further complains about Strow's treatment of Plaintiff's wisdom teeth in July 2014 (*Id*.). The grievance was returned to Plaintiff as untimely as it was submitted outside of the 60 day time period (*Id*. at p. 2, 31). No other grievances related to Plaintiff's dental treatment were received by the ARB (*Id*. at p. 2).

Defendant Strow has also attached Plaintiff's cumulative counseling summary (Doc. 32-3). Defendant notes that the summary indicates that Plaintiff has discussed

grievances with his counselor in the past, including complaining about grievances that were not responded to by his counselor (*Id*. at p. 3-5). However, there is no indication in 2014 that he discussed a July 2014 grievance with his counselor regarding dental care (*Id*. at p. 4).

Plaintiff's complaint indicates that he submitted an emergency grievance to Warden Butler on July 31, 2014 regarding the treatment for his wisdom teeth (Doc. 1, p. 14). He also indicated that he complained to a nurse about his wisdom teeth on August 11, 2014 (*Id*. at p. 14-15). Plaintiff also attached an affidavit from Clifford Baker to his complaint (*Id*. at p. 18). Baker was Plaintiff's cellmate in July 2014 and he testified in his affidavit that he saw Plaintiff hand two grievances, one emergency grievance directed to Warden Butler and one regular grievance for his counselor, to a guard on July 31, 2014 (*Id*.). Plaintiff indicates in his complaint that he never received a response to his grievances.

As there remains a dispute of fact as to whether Plaintiff's actually filed his July 31, 2014 emergency grievance at Menard Correctional Center, the undersigned set this matter for an evidentiary hearing pursuant to ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).**

**B.** *Pavey* **Hearing**

The undersigned held an evidentiary hearing on June 5, 2017. The undersigned heard testimony from Susan Hill, David Dwight, and Plaintiff.

### 1. *Susan Hill*

Susan Hill, a correctional counselor at Menard Correctional Center, first testified. Hill has been a counselor at Menard from 2014 to the present and prior to her assignment as a counselor, she was temporarily assigned as a correctional counselor.

Hill testified that any grievances that are not marked as an emergency first come to the correctional counselor. Hill indicated that if she had any contact with an inmate or received a kite from an inmate, then she marked that encounter on the inmate's cumulative counseling summary. For example, Hill noted that the October 4, 2013 entry on the counseling summary indicated that Plaintiff's counselor at the time answered and returned a grievance regarding black stripe jumpsuits (Doc. 32-3, p. 5). Similarly, on December 11, 2013, Plaintiff was seen by a counselor on the gallery and Plaintiff's grievance regarding confiscated art supplies were discussed (*Id*.).

Hill noted that there were numerous entries where grievances were discussed by the counselors with Plaintiff. On July 22, 2015, Plaintiff complained to his counselor that he wrote a grievance back in September 2014 regarding him not receiving a copy of his shakedown slip from that time (Doc. 32-3, p. 3). He spoke with a counselor on August 15, 2014 about a grievance regarding his TV (*Id*. at p. 4). On September 9, 2014 he discussed a grievance regarding a state loan fan. It was also noted on that date he filed an emergency grievance on that issue on July 10, 2014 that was deemed not an emergency (*Id*.). He also met with a counselor on three occasions in December where he discussed grievances, but those were regarding a broken TV and not his dental issues

(*Id.* at p. 3-4).

Hill testified that she does not handle emergency grievances. She did note that if an inmate complained about grievances being responded to, then she would put that interaction down with the inmate in the cumulative counseling summary. Thus, if an inmate raised an issue with the status of an emergency grievance, she would put that in the summary. But if she simply received an emergency grievance to forward to the warden, she would not document that receipt in the counseling summary. She would only document an emergency grievance in the summary if an inmate inquired about the grievance.

### 2. *David Dwight*

David Dwight, office coordinator and administrative support for the grievance office, next testified about Plaintiff's grievances. Dwight testified that he is familiar with the grievance and emergency grievance logs as he maintains the logs and inputs all of the data on the logs. Dwight conducted a search of Plaintiff's grievances at the request of the legal office which is reflected in an email exhibit provided to the Court at the hearing (Doc. 50-1, p. 1). He reviewed the logs in order to look for Plaintiff's grievances submitted during the relevant time frame. Dwight testified that the only grievances not included in the logs are those which are received outside of the allowed timeframe or those which are not submitted following proper procedure. For example, if a grievance was received by the grievance office but did not have a counselor response, that grievance would be returned to the inmate and not logged on the

grievance log. However, Dwight testified that there would be an entry in the inmate's counseling summary indicating the return of the grievance. For instance, Plaintiff's cumulative counseling summary indicates that on June 6, 2014 a grievance was returned to Plaintiff because it was submitted outside of the timeframe (Doc. 32-3, p. 4).

Dwight testified that he receives grievances from inmates through the grievance mailbox. One mailbox is secured while the other is not. He was not sure if the counselors put the grievances in the mailbox or if the inmates submit the grievances directly to the mailbox. Dwight stated that he did not receive grievances directly from the inmates.

Dwight indicated that he did not receive any emergency grievances from Plaintiff in August 2014.

### 3. *Plaintiff*

Finally, Plaintiff testified about the grievances he submitted regarding his wisdom teeth. Plaintiff testified that he saw Dr. Strow on July 1, 2014 and told him about his wisdom teeth, both his left and right teeth. Strow told him he would put him on a list for extractions and gave him some pain medication, although Plaintiff does not recall the amount of pain medication he was provided. His wisdom teeth were extracted one month and a half after his visit with Strow.

Plaintiff testified that after his initial visit with Strow, he continued to have pain and did not hear back from Strow as promised, so he wrote a grievance about a month after his first meeting with Strow. He put it in the door of his cell for pick-up as he was

in segregation at the time. He does not recall who picked his grievance up from his cell door. He got out of segregation on August 5, 2014 and waited an additional two weeks for a response to his grievance. When he didn't receive a response, Plaintiff testified that he put in a request for a nurse sick call and saw the nurse two days later. He was then scheduled to have his teeth pulled after meeting with the nurse.

Plaintiff testified that he has submitted a number of grievances, including an emergency grievance about his fan not working. Plaintiff acknowledged that he received a response to that emergency grievance. He submitted other grievances which he received responses to, including a July 2014 grievance about a disciplinary report. Plaintiff indicated that he handwrites the grievances and makes copies of the grievances. He kept a copy of his July 31, 2014 grievance regarding his wisdom teeth and submitted that copy to the ARB.

## LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted." *Id*. **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his

remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. **at 742.**

### A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq*. The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the

grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the

offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

## ANALYSIS

Here, the undersigned **RECOMMENDS** that the Court find that Plaintiff failed to exhaust his administrative remedies. Defendants Butler and Strow argue that Plaintiff did not submit an emergency grievance regarding his wisdom teeth and that his grievance submitted directly to the ARB was untimely. Plaintiff, however, argues that he attempted to submit an emergency grievance but never received a response. If true, then his attempts at exhaustion would be deemed thwarted and he may proceed with his lawsuit. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to**

**respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).**

However, the undersigned does not find Plaintiff's testimony on the topic to be credible. While Plaintiff testified that he submitted an emergency grievance on July 31, 2014, there is nothing in the record to support Plaintiff's claims. The grievance does not appear on the emergency grievance log or the regular grievance log. There is ample evidence in the grievance logs that Plaintiff submitted other grievances, including a grievance around the same time regarding Plaintiff's fan, which was submitted as an emergency grievance (Doc. 32-1, p. 62). That grievance was returned to Plaintiff as not an emergency (*Id.*). But the logs do not reflect a grievance received in July or August regarding Plaintiff's wisdom teeth. And Dwight testified that no such emergency grievance was received in August.

Nor is there any evidence in the cumulative counseling summary that Plaintiff ever inquired about his July 31 grievance. There is evidence that Plaintiff met with his counselor in July and on two occasions in August 2014, but there is no evidence that Plaintiff ever inquired about the emergency grievance regarding his wisdom teeth. And the undersigned deems credible counselor Hill's testimony that all discussions and inquiries regarding grievances are in the counseling summary. The summary reflects that Plaintiff inquired about a TV grievance on August 15, 2014 but the entry indicates that no other issues were discussed (Doc. 32-3, p. 4). There are entries in the log indicating that Plaintiff submitted duplicate grievances regarding his broken TV with

notations that those were responded to previously (*Id*. at p. 3). Plaintiff even inquired in July 2015 about a grievance he wrote in September 2014 which he indicated he never received a response from (*Id.*). That grievance was related to a shakedown slip (*Id*.). So there is ample evidence of Plaintiff inquiring about grievances, receiving responses from grievances, and even filing duplicate grievances, but there is no evidence in the counseling summary that Plaintiff wrote a July grievance regarding his wisdom teeth. In fact there is no evidence to support that Plaintiff even complained about his wisdom teeth to his counselor during the relevant time period.

Plaintiff's complaint further alleges that he submitted his July emergency grievance not only to the warden, but also to the counselor. He also alleges that he sent the grievance to the grievance officer on September 9, 2014 and to the ARB on November 11, 2014. But none of those grievances are documented in either the grievance logs or Plaintiff's cumulative counseling summary. David Dwight testified that grievances which are received outside of the normal procedures, or are untimely, are returned to the inmate and noted in the cumulative counseling summary. For instance, a grievance regarding a disciplinary report was returned to Plaintiff on June 6, 2014 and the return and reason for rejection – that it was untimely – was noted in Plaintiff's counseling summary. The Court finds both Dwight's and Hill's testimony on this point to be credible. But there are no such entries in the cumulative counseling summary indicating that Plaintiff's July grievance regarding his wisdom teeth was received and returned for not having a counselor response, which it would not have had if Plaintiff

had submitted it directly to the grievance office as alleged in his complaint.

In fact, the only reference of Plaintiff's grievance being received by anyone in the grievance chain is by the ARB in December of 2015, over a year after Plaintiff alleges he submitted his grievance at Menard Correctional Center. But that grievance does not appear to be the one Plaintiff alleges he submitted to the ARB in November 2014, rather Plaintiff alleges in his complaint that he resubmitted the grievance to the ARB on December 8, 2015 (Doc. 1, p. 8). There is no evidence in the record to suggest that he tried to submit the grievance to the ARB in 2014, nor does the undersigned find Plaintiff's testimony that he tried to submit it at any earlier time to be credible.

What the undersigned is left with is Plaintiff's testimony that he sought to submit his July grievance on numerous occasions but never received a response from anyone. The undersigned does not find this testimony to be credible. The records reflect that Plaintiff filed a number of grievances and received responses to those grievances. The records indicate that a number of Plaintiff's grievances were received and documented, both as regular grievances and emergencies grievances. The records also reflect that Plaintiff discussed numerous grievances with his counselor and inquired about grievances that he had yet to receive a response to. But none of the records reflect the testimony that Plaintiff submitted a July grievance regarding his wisdom teeth. Nor does it appear that he ever inquired about such a grievance. Thus, the undersigned finds that Plaintiff did not submit his July 2014 emergency grievance to either the warden, grievance officer, counselor, or the ARB in 2014 as he alleges. It appears from

the records, instead, that Plaintiff submitted his grievance only to the ARB in December 2015, mostly likely in preparation for the filing of his lawsuit, which he filed the following April 2016. But he did not seek to file a timely grievance at Menard in July 2014 as he alleged nor does the undersigned find that he was thwarted in submitting a grievance as there is no evidence in the record of Plaintiff ever being thwarted in the grievance process.

Plaintiff, in the alternative, argues that he did not need to submit a grievance on his wisdom teeth as he received the relief he was seeking a short time later. Plaintiff argues that as his wisdom teeth were removed in August and September, before the required time to submit a grievance had passed – in this case sixty days from the date of the incident/occurrence under Illinois Administrative Code – he need not file a grievance as he had received all of the relief he could seek through the grievance process. **20 Ill. Admin. Code § 504.810(a).** To support his position, Plaintiff cites to *Thornton v. Snyder*, **428 F.3d 690, 695 (7th Cir. 2005).** In that case, the Seventh Circuit held that once the inmate received all of the relief available under the institution's administrative procedures, then his administrative remedies were exhausted and he did not have to pursue his grievance further. *Id*. **at 696.**

However, the undersigned finds that the facts in *Thornton* are easily distinguishable from the facts in this case. In *Thornton*, the inmate had already filed a grievance and then subsequently received the relief he sought in that grievance. The Seventh Circuit found that the inmate did not need to appeal his grievance to the ARB

once he had received the relief he sought from the prison itself. ***Thornton*, 428 F.3d at 696-97.** There is no requirement that inmates "appeal favorable decisions." *Id.* **at 696.** This fits with the purpose of the exhaustion requirement, which is to provide notice to the prison and an opportunity to remedy the inmate's issues. *Id.* **at 696.** But in this case, the undersigned finds that Plaintiff did not first file a grievance to provide notice to the prison of his issues. Although he was later awarded the relief he sought, the prison had no notice that he took issue with Strow's care, nor did they have an opportunity to remedy that issue through the proper channels. The Court in *Thornton* did not hold that an inmate need not file a grievance at all, nor would such an interpretation fit within the purpose of the PLRA. As Plaintiff did not submit his July 2014 grievance, the undersigned **RECOMMENDS** that the Court find that he failed to exhaust his administrative remedies.

## CONCLUSION

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies and **GRANT** the motion for summary judgment as to both Defendants Strow and Butler (Docs. 31,32 and 44).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g.,*

*Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, Objections to this Report and Recommendation must be filed on or before **July 5, 2017.**

**IT IS SO ORDERED**.
DATED:   June 14, 2017.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge